IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

AMY D'AMATO,

Plaintiff,

v.

MICHAEL J. ASTRUE[1], Commissioner of Social Security,

Defendant.

: Civil Action No. 06-203-JJF

---

David J. Lyons, Esquire of THE LYONS LAW FIRM, Wilmington, Delaware.
Attorney for Plaintiff.

Colm F. Connolly, Esquire, United States Attorney, and Joyce M.J. Gordon, Esquire, Special Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.
Of Counsel: Michael McGaughran, Esquire, Regional Chief Counsel, and Brian C. O'Donnell, Esquire, Assistant Regional Counsel of the SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.
Attorneys for Defendant.

---

**MEMORANDUM OPINION**

March 12, 2008
Wilmington, Delaware

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted for the former Commissioner JoAnne B. Barnhart.

**Farnan, District Judge.**

Presently before the Court is an appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g), filed by Plaintiff, Amy D'Amato, seeking review of the final administrative decision of the Commissioner of the Social Security Administration (the "SSA") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381-1383f. Plaintiff has filed a Motion For Summary Judgment requesting the Court to enter judgment in her favor, or in the alternative to remand this matter to the SSA for further review by the Appeals Council or an Administrative Law Judge. In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 36) requesting the Court to affirm the Commissioner's decision. For the reasons set forth below, Defendant's Motion For Summary Judgment will be granted and Plaintiff's Motion For Summary Judgment will be denied. The decision of the Commissioner dated November 21, 2003, will be affirmed.

**BACKGROUND**

**I. Procedural Background**

Plaintiff protectively filed an application for SSI on September 28, 2001, alleging disability since September 1998, due to a mental impairment and back injury. (Tr. 104-107, 182). Plaintiff's application was denied initially and upon

reconsideration. (Tr. 26, 44-51). Thereafter, Plaintiff requested a hearing before an administrative law judge (the "A.L.J."). On November 21, 2003, the A.L.J. issued a decision denying Plaintiff's application for SSI. (Tr. 26-34). Following the unfavorable decision, Plaintiff timely appealed to the Appeals Council. (Tr. 22). On February 14, 2006, the Appeals Council denied Plaintiff's request for review (Tr. 8-11), and the A.L.J.'s decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 1383(c)(3), seeking review of the A.L.J.'s decision denying her claim for SSI. In response to the First Amended Complaint, Defendant filed an Answer (D.I. 25) and the Transcript (D.I. 27) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief in support of the Motion. In response, Defendant filed a Cross-Motion For Summary Judgment and a combined opening brief in support of his Cross-Motion and opposition to Plaintiff's Motion requesting the Court to affirm the A.L.J.'s decision. Plaintiff has declined to timely file a Reply Brief. Accordingly, this matter is fully briefed and ripe for the Court's review.

## II. Factual Background

A. Plaintiff's Medical History, Condition and Treatment

At the time of the A.L.J.'s decision on Plaintiff's application, Plaintiff was twenty-six years old. (Tr. 27, 104). Plaintiff has a general equivalency degree ("GED") and past relevant work experience as a cashier and nursing assistant. (Tr. 168, 188). Plaintiff alleges disability since September 1998, but her work history report shows that she maintained employment until December 2000.

Plaintiff's arguments concerning the errors of the A.L.J. center on her alleged mental impairments. Therefore, the Court will limit its discussion of the medical record to those facts relevant to Plaintiff's mental and emotional condition.

Plaintiff treated at the Mobile Health Center with R.S. Joshi, M.D., from April 1999 through July 1999 for depression and other emotional disturbances. Treatment notes discuss mood swings, difficulty sleeping, and temper control issues. Plaintiff was diagnosed with major depression, recurrent and chronic. As of July 1999, Plaintiff indicated that she continued to have problems with her temper, had beaten her husband twice and had thoughts of hurting herself, her husband and her son. Dr. Joshi noted that Plaintiff's mood was irritable and dysphoric, but she had logical coherent thoughts within normal limits, spontaneous and coherent speech, no hallucinations or

delusions, intact memory and fair insight and judgment. Plaintiff was instructed to discontinue Zoloft and Trazondone and to replace those medications with Depakote and Wellbutin. (Tr. 219-231).

In October 1999, Plaintiff underwent a mental status examination at Carelink. (Tr. 233-236). Plaintiff was friendly and cooperative during the examination, had coherent speech, intact attention and memory, adequate concentration, average intelligence, fair insight and judgment, and no preoccupations, delusions or hallucinations. However, Plaintiff's mood was depressed. Plaintiff was diagnosed with dysthymic disorder and assigned a global assessment of functioning ("GAF") score of 60.[2] (Tr. 236).

In December 1999, at the request of the state agency, Plaintiff underwent a psychological evaluation with Patricia Lifrak, M.D. (Tr. 239-245). Plaintiff reported mood swings, difficulty sleeping, low energy, inability to concentrate and irritability. Upon examination, Dr. Lifrak found Plaintiff to be

---

[2] A GAF score of 51-60 indicates moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers and co-workers). A GAF score of 61-70 indicates mild symptoms (e.g. depressed mood and mild insomnia) and some difficulty in social, occupational or school functions (e.g. occasional truancy or theft within the household), but generally functioning well with meaningful interpersonal relationships. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text rev., 2000) ("DSM-IV-TR").

cooperative, friendly and talkative. Dr. Lifrak found that Plaintiff's thought process was logical and goal-directed, but that her mood was depressed. Plaintiff's recent memory was intact, but there was some impairment in her remote memory. Her concentration was also intact and her cognitive function, intelligence and fund of knowledge were average for her age. Plaintiff further exhibited average judgment and insight during the interview. Based upon her observations, Dr. Lifrak diagnosed Plaintiff with major depression, recurrent, moderate; polysubstance dependence in sustained, full remission; and a history of symptoms consistent with attention deficit/hyperactive disorder. Dr. Lifrak assigned Plaintiff a GAF score of 55-60 and found her prognosis to be fair. Dr. Lifrak further noted that a psychological evaluation would be helpful to rule out the presence of a learning disorder. Dr. Lifrak also completed a residual functional capacity ("RFC") assessment for Plaintiff in which she opined that Plaintiff's ability to relate to others was moderately severe and that she had a moderate restriction in her daily activities, personal habits, ability to perform complex tasks, ability to work where contact with others would be minimal, ability to perform repetitive tasks and ability to perform varied tasks. Dr. Lifrak noted that Plaintiff had moderate to moderately severe limitations in her ability to comprehend and follow instructions and perform work requiring

frequent contact with others. (Tr. 244-245).

On December 23, 1999, D. Fugate, Ph.D., a state agency psychologist, reviewed Plaintiff's psychiatric records and concluded that Plaintiff was capable of performing simple, routine work related activities. Dr. Fugate found Plaintiff to be moderately limited in her ability to understand, remember and carry out detailed instructions, maintain concentration for extended periods of time, complete a normal work week without interruptions from psychologically based symptoms, and respond appropriately to changes in the work setting. In all other areas of evaluation, Plaintiff was noted to be "not significantly limited." (Tr. 250-261).

A second review of Plaintiff's records was conducted on May 16, 2001, by Phyllis Smoyer, M.D., a state agency psychiatrist. Dr. Smoyer concluded that Plaintiff could perform low stress work activities involving minimal contact with others. Dr. Smoyer found that Plaintiff was moderately limited in more categories than Dr. Fugate. Specifically, in addition to those categories listed by Dr. Fugate, Dr. Smoyer also found that Plaintiff had moderate limitations in her ability to perform activities within a regular schedule and maintain attendance, work in coordination with others without being distracted, accept instructions from supervisors and respond appropriately, get along with others, maintain socially appropriate behavior, respond to changes in the

work settings, and set realistic goals. (Tr. 301-314).

Plaintiff also treated with Aydin Z. Bill, M.D. since September 15, 2000. However, Dr. Bill's records reveal numerous missed appointments and provide little detail regarding Plaintiff's condition during the relevant time frame.

A third state agency physician reviewed Plaintiff's medical evidence and concluded that Plaintiff retained the RFC to perform simple, light work. This state agency physician found that Plaintiff had mild restriction of daily living activities, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace and no episodes of decompensation. (Tr. 344-357).

On March 14, 2002, Dr. Bill wrote a letter indicating that he was caring for Plaintiff and that she was "unable to work for a minimum of three months." (Tr. 462). Dr. Bill did not cite to any objective medical evidence to support his assertion, and indeed, did not provide any reason for his determination that Plaintiff was unable to work.

On April 1, 2002, Dr. Bill completed a psychiatric assessment form for Plaintiff in which he noted that Plaintiff had a normal appearance, average intellectual functioning, average insight and judgment, but a depressed mood with visual and tactile hallucinations. (Tr. 419-420). Dr. Bill assessed Plaintiff with a GAF score of 60.

On February 3, 2003, Dr. Bill completed another evaluation of Plaintiff in which he reported that Plaintiff suffered from severe depression, severe panic attacks and severe mood swings. Dr. Bill opined that performing her past job or similar work could make Plaintiff's symptoms worse.

In light of Dr. Bill's reports, the A.L.J. sent interrogatories to Margaret Friel, M.D., a board-certified psychiatrist. (Tr. 440). Dr. Friel reviewed Plaintiff's medical records and concluded that Dr. Bill's diagnosis of visual and tactile hallucinations was unsupported by the record. (Tr. 441). Dr. Friel concluded that Plaintiff had moderate restrictions of daily living, moderate difficulties in maintaining social functioning and moderate difficulties maintaining concentration, persistence or pace. Dr. Friel concluded that Plaintiff could perform low stress work involving minimal contacts with others.

B. <u>The A.L.J.'s Decision</u>

At the hearing, Plaintiff was represented by counsel. Plaintiff testified that the longest she worked at any particular job was four months and that she had difficulty holding a job because of her violent outbursts, mood swings and depression. Plaintiff testified that her medications help control her condition somewhat. Specifically, she testified that she only has violent outbursts about once a month. However, Plaintiff testified that she has crying spells on and off each day lasting

anywhere from half an hour to two hours. Plaintiff testified that she reads to her child, that she and her sister both do the cooking, food shipping and clothes washing, but that her sister does the other household chores. Plaintiff also testified that she takes care of her and her sister's children by getting them ready for school, driving them to school, feeding the baby lunch, putting her down for a nap and then picking up the children from school, getting them dinner and getting them bathed and ready for bed.

Plaintiff's sister also testified on her behalf. According to Plaintiff's sister, Plaintiff gets very frustrated when she can't do things. Plaintiff suffers from crying spells and angry outbursts.

The A.L.J. then consulted a vocational expert. The A.L.J. asked the vocational expert to assume a younger individual with a series of jobs as a cashier and nurse assistant, who was limited to low stress work with minimal contact with others in the light vocational range. In response, the vocational expert identified the job of housekeeping cleaner, adding that "something along the light lines like an officer cleaner" would be appropriate. The A.L.J. further explained that 500 jobs would be available in Delaware and 600,000 nationally.

The A.L.J. then asked the vocational expert to consider a person who had a moderate to moderately severe limitation

comprehending and following instructions. The vocational expert testified that a moderately severe limitation in this area could compromise the ability of someone to perform the house cleaner job. The A.L.J. also asked the vocational expert to consider someone with crying spells lasting an hour or two, and the vocational expert testified that such an individual would have difficulty maintaining any work.

In his decision dated November 21, 2003, the A.L.J. found that Plaintiff suffered from the following impairments: a history of attention deficit disorder, oppositional defiance disorder, major depression, mood disorder and polysubstance dependence in remission. The A.L.J. found that these impairments were severe, but they did not meet or equal, alone or in combination, a listed impairment. The A.L.J. compared Plaintiff's condition with the Listings found at 12.02, 12.04 and 12.08 and found that the record substantiated the "A" criteria for organic mental disorder, affective disorder and personality disorder. With regard to the severity of Plaintiff's functional limitations under the "B" criteria, the A.L.J. found that Plaintiff experienced a moderate degree of limitation in her activities of daily living, social functioning, and concentration persistence and pace. The A.L.J. further found that Plaintiff had no episodes of decompensation and did not meet the "C" criteria of the listings.

Having concluded that Plaintiff's condition did not meet a listing, the A.L.J. considered her RFC and concluded that Plaintiff was capable of performing light exertional work, and that her emotional problems "moderately limited [her] in that she requires low stress, simple, routine repetitive tasks, with little or no contact with the general public, supervisors or co-workers." (Tr. 34). The A.L.J. also concluded that Plaintiff's testimony regarding her limitations was not fully credible. Using Medical-Vocational Rule 201.20 as a framework for decision-making, the A.L.J. found that Plaintiff could perform a significant number of jobs in the national economy. Accordingly, the A.L.J. concluded that Plaintiff was not under a disability within the meaning of the Act.

**STANDARD OF REVIEW**

Findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. Id. In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if

it is supported by substantial evidence. Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## DISCUSSION

### I. Evaluation Of Disability Claims

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity

by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. § 1382(c)(a)(3). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. § 416.905. Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990). The claimant bears the initial burden of proving disability. 20 C.F.R. §§ 416.912(a); Podeworthy v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis. 20 C.F.R. §§ 416.920. In step one, the A.L.J. must determine whether the claimant is currently engaged in substantial gainful activity. In step two, the A.L.J. must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three. In step three, the A.L.J. must compare the medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial

gainful work. Id. at 428. If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled. If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five. Id.

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. Id. The claimant bears the burden of establishing that he or she cannot return to his or her past relevant work. Id.

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy. At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied. Id. Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity. Id. In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments. At this step, the A.L.J. often seeks the assistance of a vocational expert. Id. at 428.

## II. Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By her Motion, Plaintiff contends that the A.L.J.'s decision is not supported by substantial evidence. Specifically, Plaintiff contends that the A.L.J. failed to fully and correctly evaluate the testimony of the vocational expert; acknowledge that Plaintiff had prior episodes of decompensation in work settings and the impact of such episodes on her ability to engage in substantial gainful activity; and correctly interpret, recite and evaluate the medical evidence as it applies to Plaintiff's mental RFC. Each of Plaintiff's arguments turn on two key issues: (1) whether the A.L.J. failed to consider the moderate to moderately severe limitation on Plaintiff's ability to comprehend and follow instructions, and (2) whether the A.L.J. erred in failing to credit the testimony of Plaintiff and her sister regarding her emotional restrictions, including episodes of decompensation.

In evaluating Plaintiff, Dr. Lifrak opined that Plaintiff suffered from moderate to moderately severe limitations in her ability to comprehend and follow instructions.[3] Plaintiff

---

[3] Dr. Lifrak also opined that Plaintiff had moderate to moderately severe limitations in her ability to perform work requiring frequent contact with others. Plaintiff does not appear to challenge the A.L.J.'s assessment as it relates to this restriction, and in any event, the Court finds that the A.L.J. properly accounted for this limitation when he restricted Plaintiff to work requiring little or no contact with the public, supervisors or co-workers. The Court further notes that the vocational expert was still able to identify work Plaintiff would be able to perform with this limitation, and therefore, the Court

contends that the A.L.J. ignored this limitation in formulating Plaintiff's RFC and ignored the vocational expert's related testimony that such a moderately severe limitation would preclude Plaintiff from performing all work.

A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment[s]." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (citation omitted). When determining an individual's RFC at step four of the sequential evaluation, the A.L.J. must consider all relevant evidence including medical records, observations made during medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others. Id. Before an individual's RFC can be expressed in terms of an exertional level of work, the A.L.J. "must first identify the individual's functional limitations or restrictions and assess his or her work related abilities on a function by function basis." SSR 96-8p. The RFC must also address both the exertional and non-exertional capacities of the individual. Id. Non-exertional capacity refers to "all work-related limitations and restrictions that do not depend on an individual's physical strength," such as limitations which are psychological or mental in nature. Id.; 20 C.F.R. § 1469(a)(c) (listing examples of non-exertional limitations).

---

cannot conclude the A.L.J.'s decision was erroneous as it pertains to this limitation.

The A.L.J.'s RFC assessment must "be accompanied by a clear and satisfactory explanation of the basis on which it rests." Fargnoli, 247 F.3d at 41. In weighing the evidence, the A.L.J. must give some indication of the evidence which he or she rejects and his or her reason for discounting the evidence. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000); see also SSR 96-8p. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir.1981). The responsibility for formulating an RFC rests exclusively with the A.L.J., and the RFC finding is considered an administrative finding and not a medical opinion. SSR 96-50, 1996 WL 374183 (1996).

Reviewing the A.L.J.'s decision in light of the record as a whole, the Court concludes that the A.L.J.'s decision that Plaintiff retained the RFC to perform a significant range of light work limited by jobs requiring low stress, simple routine repetitive tasks, with little or no contact with the general public was supported by substantial evidence. Both in his opinion and at the hearing, the A.L.J. considered the results of Dr. Lifrak's consultative examination, including her opinion that Plaintiff had moderate to moderately severe difficulty following instructions. Plaintiff contends that the A.L.J. ignored the vocational expert's testimony that this limitation precluded

Plaintiff from performing the identified job of house/office cleaner; however, a review of the vocational expert's testimony reveals that her opinion was centered more on someone with a moderately severe to severe limitation following instructions than someone like Plaintiff whose limitation was moderate to moderately severe. In this regard, the vocational expert explained, "In my opinion, I think the limitations would sort of border on moderately severe limitations in comprehending and following instructions may [sic] affect the ability to do the housekeeping job." (Tr. 547) (emphasis added). The vocational expert went on to clarify that "[s]omeone who has severe limitations in following instructions, that could compromise the ability to do that job." (Tr. 547). Indeed, each time the vocational expert referred to this limitation, she did so in the context of evaluating the limitation as a moderately severe to severe limitation, rather than a limitation ranging from moderate to moderately severe, which is how Dr. Lifrak couched the limitation.[4] (Tr. 548).

Moreover, the A.L.J. correctly noted that other state agency physicians opined that Plaintiff's restrictions were more properly characterized as moderate restrictions, and to the

---

[4] At most, the vocational expert's testimony can be construed as suggesting that an individual with moderately severe limitations is "borderline" in the ability to hold the job, an opinion which is quite different from Plaintiff's characterization of the vocational expert's testimony that she would be precluded from performing all work.

extent Dr. Lifrak's assessment differed, the A.L.J. was entitled to reject that portion of her opinion in favor of the other state agency physicians' opinions which were supported by the record evidence as a whole. See Jones v. Sullivan, 954 F.2d 125, 128-129 (3d Cir. 1991) (recognizing that a non-examining physician can provide substantial evidence to support the A.L.J.'s decision); Rivera v. Barnhart, 239 F. Supp.2d 413, 420 (D. Del. 2002) (recognizing that A.L.J. could rely on state agency physician opinions where they were consistent with other evidence in the record). Indeed, three state agency physicians and a medical expert obtained by the A.L.J. all opined that Plaintiff had the RFC to perform low stress work involving minimal contact with others. These opinions are supported by the medical evidence of record, including the GAF scores of Dr. Lifrak who assessed Plaintiff with a GAF of 55-60[5], and Plaintiff's treating psychologist, Dr. Bill, who assessed Plaintiff with a GAF of 60. Both scores indicate moderate, even bordering on mild, mental limitations.

In addition, the A.L.J. took into account Plaintiff's compromised ability to follow instructions by limiting her to

---

[5] Even Dr. Lifrak opined that Plaintiff had intact attention, adequate concentration, average cognitive function and intelligence. These observations by Dr. Lifrak further suggest that the limitation on Plaintiff's ability to comprehend and follow instructions was not as severe as the vocational expert considered it to be when responding to the A.L.J.'s questions.

routine, repetitive tasks. This assessment is further supported by Plaintiff's testimony regarding her daily activities, which included taking care of two small children, reading, completing crossword puzzles and watching television. Accordingly, the Court cannot conclude that the A.L.J. erred in his RFC determination or in his evaluation of the vocational expert testimony as those issues relate to a moderate to moderately severe limitation on Plaintiff's ability to comprehend and follow instructions.

As for the testimony of Plaintiff and her sister regarding episodes of decompensation, the Court concludes that the A.L.J. did not err in declining to fully credit this testimony. Although the A.L.J. must consider a plaintiff's subjective complaints, the A.L.J. has the discretion to evaluate the plaintiff's credibility and "'arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant.'" Gantt v. Commissioner Social Sec., 2006 WL 3081094, *2 (3d Cir. Oct. 31, 2006) (citations omitted). Subjective complaints alone are insufficient to establish disability and allegations of pain or other subjective symptoms must be supported by objective medical evidence. Id., 20 C.F.R. § 416.929. In this regard, the A.L.J. must first determine whether the plaintiff suffers from a medical impairment that could reasonably be expected to cause the alleged

symptoms. Once the A.L.J. makes this determination, he or she must evaluate the intensity and persistence of the pain or symptoms, and the extent to which they affect the individual's ability to work. Specifically, the A.L.J. is required to consider such factors as (1) plaintiff's daily activities; (2) the duration, location, frequency, and intensity of the pain and other symptoms; (3) any precipitating and aggravating factors; (4) any medication taken to alleviate pain or other symptoms; (5) treatments other than medication; (6) any other measures used to relieve the symptoms; and (7) other factors concerning functional limitations or limitations due to pain or other symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

This analysis requires the ALJ to assess the plaintiff's credibility to determine the extent to which he or she is accurately stating the degree of pain or subjective symptoms and/or the extent to which he or she is disabled by them. See 20 C.F.R. §§ 416.929(c). Generally, the A.L.J.'s assessment of a plaintiff's credibility is afforded great deference, because the A.L.J. is in the best position to evaluate the demeanor and attitude of the plaintiff. See e.g. Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Griffith v. Callahan, 138 F.3d 1150, 1152 (7th Cir. 1998); Wilson v. Apfel, 1999 WL 993723, *3 (E.D. Pa. Oct. 29, 1999). However, the A.L.J. must explain the reasons for his or her credibility determinations. Schonewolf v.

Callahan, 972 F. Supp. 277, 286 (D.N.J. 1997) (citations omitted).

In this case, the A.L.J. concluded that not all of Plaintiff's allegations regarding her limitations were supported by the medical evidence, and therefore, he declined to credit her testimony that her limitations precluded her from performing all work. The Court concludes that the A.L.J.'s decision is not erroneous and is supported by substantial evidence. Treatment records concerning Plaintiff's mental health condition contain no evidence regarding episodes of decompensation, and her GAF scores, assessed by both her treating psychiatrist as well as by the consultative examiner, suggest a higher level of functioning than that to which Plaintiff testified.

Because the Court finds no error in the A.L.J.'s determination regarding Plaintiff's credibility, the Court further concludes that the A.L.J. was not required to include episodes of decompensation in his hypothetical question to the vocational expert. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (holding that hypothetical question must contain claimant's limitations supported by the record for vocational expert's answer to be considered substantial evidence). Further, the vocational expert was able to identify at least one occupation which existed in significant numbers in the national economy which Plaintiff was able to perform. 20 C.F.R. §

416.966(b). Accordingly, the Court concludes that the A.L.J. did not err in his determination that Plaintiff was not disabled, and substantial evidence supports the A.L.J.'s decision.

**CONCLUSION**

For the reasons discussed, the Court will grant Defendant's Motion For Summary Judgment and deny Plaintiff's Motion For Summary Judgment. The decision of the Commissioner dated November 21, 2003, will be affirmed.

An appropriate Order will be entered.